FILED & JUDGMENT ENTERED
Steven T. Salata

Aug 24 2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
George R. Hodges
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

In re:

WOODEND, LLC,

Debtor.

Case No. 11-31672

Chapter 11

## AMENDED ORDER GRANTING SYNOVUS BANK'S MOTION TO DISMISS

This matter was before the Court on the motion of Synovus Bank, f/k/a The National Bank of South Carolina, ("Synovus"), seeking dismissal of the above-captioned case pursuant to 11 U.S.C. § 1112. The debtor, through counsel, filed an objection to the relief requested.

After considering the arguments of counsel, the pleadings, and the record before the Court, the Court grants the relief requested by Synovus, making the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The debtor Woodend, LLC ("Debtor") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 27, 2011.

2. Debtor is in possession of all assets of the estate, no trustee having been appointed to date.

3. To date, no statutory committee has been formed.

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

5. Deertrack Investors, LLC ("Deertrack") was a South Carolina limited liability company organized in March, 2006. Deertrack's only asset is a parcel of real property located in Horry County, SC, upon which a golf course was, at one time, operated ("Deertrack Property"). Deertrack has no employees, is generating no revenues, and no business operations. Deertrack is not authorized to do business in North Carolina.

6. Deertrack is and has been mired in state court litigation in South Carolina with respect to the Deertrack Property. The litigation includes a dispute with Horry County over the zoning of the Deertrack Property, and a separate dispute with homeowners who live around the property who object to Deertrack's plans to develop the real estate, and who want the golf course reopened. Each of these cases has been pending for several years; however, a decision has been made by a special master and confirmed by the South Carolina Court in the homeowners' suit in favor of the Debtor. That decision is now on appeal to the South Carolina Court of Appeals.

7. Woodend, LLC ("Woodend") is a South Carolina limited liability company, which was organized in November 2005. Woodend was authorized to do business in North Carolina and is the owner of a single parcel of real estate comprised of various residential lots, located in North Carolina.

8. Woodend and Deertrack have common owners.

9. Synovus is the holder of a secured claim against Deertrack in the amount of approximately $2,926,448.09. Synovus' claim is secured by a properly perfected, first mortgage lien on the Deertrack Property. Synovus does not have a claim against Woodend.

10. Because of Deertrack's existing and continuing defaults under its loan documents with Synovus, on April 14, 2010, Synovus filed a foreclosure action seeking to foreclose its mortgage on the Deertrack Property. On May 20, 2011, the South Carolina Court entered its Order and Judgment of Foreclosure and Sale, entering judgment against Deertrack in favor of Synovus in the amount of $2,926,448.09 as of May 17, 2011. The Court also ordered the Deertrack Property sold at a foreclosure sale on July 5, 2011.

11. Although there is some dispute over the exact date, it is undisputed that Woodend and Deertrack merged shortly before the petition was filed. The surviving entity was "Woodend, LLC." On June 27, 2011, eight days before the scheduled foreclosure sale of the Deertrack Property, the newly merged "Woodend, LLC," (the "Debtor") filed the above-captioned case.

12. The Debtor's Schedules indicate that it has three secured creditors: Synovus and Deertrack Management, LLC, who hold a first and second lien on the Deertrack Property, respectively, and Fifth Third Bank, who holds a first lien on the Woodend property. The Deertrack Management, LLC second lien is a purchase money second mortgage in which the payment terms are based on sale of lots or parcels after development approval has been obtained. The secured debt comprises $7,345,729.32 of the Debtor's total listed debt of $7,402,130.49. The Debtor lists only four unsecured creditors, with claims totaling approximately $50,000. Three of the unsecured creditors are South Carolina law firms who hold claims, presumably, against Deertrack for legal services provided. The largest unsecured creditor is the McNair Law Firm, which has a claim in the amount of $48,548.27.

13. The Debtor's Schedules also reveal that the Debtor has generated no income in 2011. Gross revenues from "lot sales" in the amount of $100,000 were reported for 2010. As Woodend is the only entity that has lots to sell, this revenue could only have been generated by it. However, the members of Deertrack, LLC have invested more than $3,000,000 in capital contributions for a portion of the purchase price and for payment of ongoing operations.

## CONCLUSIONS OF LAW

14. Synovus asserts that this case was filed in bad faith and should be dismissed for "cause" pursuant to this Court's power under 11 U.S.C. §§ 1112 and 105. The Debtor counters that the case was not filed in bad faith. The Debtor claims it needs to reorganize and that the pre-petition merger of Woodend and Deertrack was done to minimize the cost of two bankruptcy filings and to enable Woodend to funnel the equity in its real property to support the Deertrack development efforts. The Debtor presented evidence that the equity in the Woodend Development is almost $900,000.

15. Although the Bankruptcy Code does not specifically provide for a "good faith filing" requirement applicable to Chapter 11 cases, it is well recognized that there is an implicit requirement that a Chapter 11 petition be filed in good faith. *See In re Carolin Corp.*, 886 F.2d 693, 698-99 (4th Cir. 1989) (citations omitted); *see also In re Premier Automotive Service, Inc.,* 492 F.3d 274 (4th Cir. 2007). The good faith requirement prevents "abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes." *See Carolin,* 886 F.2d at 698 (quoting *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1072 (5th Cir. 1986)).

4

16. When seeking dismissal of a Chapter 11 case for lack of good faith, the Court must apply the two-prong test articulated by the Fourth Circuit in *Carolin*. *See id.* at 700-01. The movant has the burden of proof to establish cause for dismissal. *See In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707 (Bankr. D. Md. 2011).

17. Under the first prong, the movant must show "the objective futility of any possible reorganization." *See Carolin,* 886 F.2d at 694. Inquiry under this prong focuses on the debtor's financial stability, whether there exists a going concern to preserve, and whether there exists any realistic hope of rehabilitation. *See id.* at 701.

18. Under the second prong, the movant must provide proof of "the subjective bad faith of the petitioner in invoking this form of bankruptcy protection." *See id.* at 694. "The subjective bad faith inquiry is designed to insure that the petitioner actually intends 'to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business.'" *See id.* at 702 (citations omitted). This does not mean that evidence of malice is required; rather, the focus is on whether the debtor actually intends to use Chapter 11 to reorganize an existing enterprise.

19. While separate inquiries into both prongs of this test are required, "proof inevitably will overlap." *See id.* at 701. The overall aim of the two-pronged inquiry is "to determine whether the purposes of the Code would be furthered by permitting the Chapter 11 petitioner to proceed." See *id.* In undertaking this analysis, the court will examine the totality of the circumstances surrounding the filing. *See id.*

20. Having reviewed the matter before the Court, the Court finds that Synovus has met its burden under the two prong test and grants the relief requested. First, continuance of this Chapter 11 case would be objectively futile. Deertrack has no current business operations, other

5

than the pursuit of litigation. Deertrack has no revenues, no employees, no going concern to preserve, and nothing to rehabilitate. Quite simply there is nothing to reorganize. Furthermore, the interests of any parties other than ownership and secured creditors are *de minimus*. Virtually all of the unsecured creditors of the Debtor are attorneys who have not been paid for services they provided to Deertrack.

21. Additionally, a review of the Debtor's schedules shows that the merged Debtor is not operating any business and has no cash flow. Without a reliable source of income, the Debtor cannot sustain a plan of reorganization to pay Synovus and other secured creditors. The purported equity in the Woodend property – even if more than theoretical – is not liquid and, thus, is not useful to the debtor in the near term. Moreover, the debtor appears wholly dependent upon an infusion of funds from investors or its owners, neither of which has been committed. So, there is no realistic reorganization in prospect.

22. The second prong of the *Carolin* test, subjective bad faith, is evident in this case as well. The Court finds that the Debtor did not file this case for a proper purpose consistent with the Bankruptcy Code and that the case was filed in bad faith. This case clearly involves another twist on "the new-debtor syndrome." *See Carolin,* 886 F.2d at 704. Before the merger, Deertrack and Woodend had no prior business relationship. They were not related in any way other than the fact that the same persons own them. Deertrack and Woodend do not have the same secured creditors, nor do they have the same unsecured creditors. Yet, virtually on the eve of the petition date, Woodend and Deertrack were combined to form a new entity, the Debtor. The Debtor then filed for bankruptcy in North Carolina -- the result of which was simultaneously to stay the imment foreclosure sale of the Deertrack Property and to force Synovus to go to another state to protect its interest in the Deertrack Property.

23. Any other rationale for the creation of this debtor is belied by the timing of the merger. It occurred shortly after the South Carolina Court entered judgment in favor of Synovus in the foreclosure action on the Deertrack property. In addition, the new debtor then filed this bankruptcy case in North Carolina. While the bankruptcy case was not immediate, there was no evidence of any unexpected intervening event that precipitated the filing. The effect of the debtor's actions was unilaterally to wholly change the nature of Synovus' borrower; to stop its imminent foreclosure in South Carolina; and to stay and remove all collection efforts to North Carolina. Thus, the court finds and concludes that the purpose for the merger and the filing of this case was to frustrate the efforts of Synovus.

24. Considering the *Carolin* factors and the totality of the circumstances, the Court finds and concludes that there is clear evidence that this case was filed in bad faith. Consequently, the case should be dismissed.

## CONCLUSION

Based on the foregoing, it is therefore **ORDERED** that the Debtor's Chapter 11 petition is dismissed.

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court

7